Hillsborough
No. 84-253

RICHARD S. MURPHY AND BEATRICE K. MURPHY

v.

FINANCIAL DEVELOPMENT CORPORATION *& a.*

May 24, 1985

*Welts & White P.C.*, of Nashua (*Jack S. White* and *Robert V. McKenney* on the brief, and *Mr. White* orally), for the plaintiffs.

*Gregoire, Calivas, Morrison & Gray*, of Dover (*Douglas C. Gray* on the brief and orally), for the defendants Financial Development Corporation and Colonial Deposit Company.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Norman H. Stahl* and *Paul G. Mattaini* on the brief, and *Mr. Mattaini* orally), for the New Hampshire Bankers Association, as amicus curiae.

DOUGLAS, J. The plaintiffs brought this action seeking to set aside the foreclosure sale of their home, or, in the alternative, money damages. The Superior Court (*Bean*, J.), adopting the recommendation of a Master (*R. Peter Shapiro*, Esq.), entered a judgment for the plaintiffs in the amount of $27,000 against two of the defendants, Financial Development Corporation and Colonial Deposit Company (the lenders).

The plaintiffs purchased a house in Nashua in 1966, financing it by means of a mortgage loan. They refinanced the loan in March of 1980, executing a new promissory note and a power of sale mortgage, with Financial Development Corporation as mortgagee. The note and mortgage were later assigned to Colonial Deposit Company.

In February of 1981, the plaintiff Richard Murphy became unemployed. By September of 1981, the plaintiffs were seven months in arrears on their mortgage payments, and had also failed to pay substantial amounts in utility assessments and real estate taxes. After discussing unsuccessfully with the plaintiffs proposals for revising the payment schedule, rewriting the note, and arranging alternative financing, the lenders gave notice on October 6, 1981, of their intent to foreclose.

During the following weeks, the plaintiffs made a concerted effort to avoid foreclosure. They paid the seven months' mortgage arrearage, but failed to pay some $643.18 in costs and legal fees associated with the foreclosure proceedings. The lenders scheduled the foreclosure sale for November 10, 1981, at the site of the subject property. They complied with all of the statutory requirements for notice. *See* RSA 479:25.

At the plaintiffs' request, the lenders agreed to postpone the sale until December 15, 1981. They advised the plaintiffs that this would entail an additional cost of $100, and that the sale would proceed unless the lenders received payment of $743.18, as well as all mortgage payments then due, by December 15. Notice of the postponement was posted on the subject property on November 10 at the originally scheduled time of the sale, and was also posted at the Nashua City Hall and Post Office. No prospective bidders were present for the scheduled sale.

In late November, the plaintiffs paid the mortgage payment which had been due in October, but made no further payments to the lenders. An attempt by the lenders to arrange new financing for the plaintiffs through a third party failed when the plaintiffs

refused to agree to pay for a new appraisal of the property. Early on the morning of December 15, 1981, the plaintiffs tried to obtain a further postponement, but were advised by the lenders' attorney that it was impossible unless the costs and legal fees were paid.

At the plaintiffs' request, the attorney called the president of Financial Development Corporation, who also refused to postpone the sale. Further calls by the plaintiffs to the lenders' offices were equally unavailing.

The sale proceeded as scheduled at 10:00 a.m. on December 15, at the site of the property. Although it had snowed the previous night, the weather was clear and warm at the time of the sale, and the roads were clear. The only parties present were the plaintiffs, a representative of the lenders, and an attorney, Morgan Hollis, who had been engaged to conduct the sale because the lenders' attorney, who lived in Dover, had been apprehensive about the weather the night before. The lenders' representative made the only bid at the sale. That bid of $27,000, roughly the amount owed on the mortgage, plus costs and fees, was accepted and the sale concluded.

Later that same day, Attorney Hollis encountered one of his clients, William Dube, a representative of the defendant Southern New Hampshire Home Traders, Inc. (Southern). On being informed of the sale, Mr. Dube contacted the lenders and offered to buy the property for $27,000. The lenders rejected the offer and made a counter offer of $40,000. Within two days a purchase price of $38,000 was agreed upon by Mr. Dube and the lenders, and the sale was subsequently completed.

The plaintiffs commenced this action on February 5, 1982. The lenders moved to dismiss, arguing that any action was barred because the plaintiffs had failed to petition for an injunction prior to the sale. The master denied the motion. After hearing the evidence, he ruled for the plaintiffs, finding that the lenders had "failed to exercise good faith and due diligence in obtaining a fair price for the subject property at the foreclosure sale . . . ."

The master also ruled that Southern was a bona fide purchaser for value, and thus had acquired legal title to the house. That ruling is not at issue here. He assessed monetary damages against the lenders equal to "the difference between the fair market value of the subject property on the date of the foreclosure and the price obtained at said sale."

Having found the fair market value to be $54,000, he assessed damages accordingly at $27,000. He further ruled that "[t]he bad faith of the 'Lenders' warrants an award of legal fees." The lenders appealed.

The first issue before us is whether the master erred in denying

the motion to dismiss. The lenders, in support of their argument, rely upon RSA 479:25, II, which gives a mortgagor the right to petition the superior court to enjoin a proposed foreclosure sale, and then provides: "Failure to institute such petition and complete service upon the foreclosing party, or his agent, conducting the sale prior to sale shall thereafter bar any action or right of action of the mortgagor based on the validity of the foreclosure."

If we were to construe this provision as the lenders urge us to do, it would prevent a mortgagor from challenging the validity of a sale in a case where the only claimed unfairness or illegality occurred during the sale itself—unless the mortgagor had petitioned for an injunction before any grounds existed on which the injunction could be granted. We will not construe a statute so as to produce such an illogical and unjust result. *State v. Howland*, 125 N.H. 497, 502, 484 A.2d 1076, 1078 (1984).

The only reasonable construction of the language in RSA 479:25, II relied upon by the lenders is that it bars any action based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing of a petition prior to the sale.

■ The master could not have found that this was such an action, because the only unfairness referred to in his report involves the amount of the sale price. Thus, his denial of the lenders' motion to dismiss was proper.

The second issue before us is whether the master erred in concluding that the lenders had failed to comply with the often-repeated rule that a mortgagee executing a power of sale is bound both by the statutory procedural requirements *and* by a duty to protect the interests of the mortgagor through the exercise of good faith and due diligence. *See, e.g., Carrols Equities Corp. v. Della Jacova*, 126 N.H. 116, 489 A.2d 116 (1985); *Proctor v. Bank of N.H.*, 123 N.H. 395, 464 A.2d 263 (1983); *Meredith v. Fisher*, 121 N.H. 856, 435 A.2d 536 (1981); *Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc.*, 118 N.H. 103, 382 A.2d 1108 (1978); *Wheeler v. Slocinski*, 82 N.H. 211, 131 A. 598 (1926). We will not overturn a master's findings and rulings "unless they are unsupported by the evidence or are erroneous as a matter of law." *Summit Electric, Inc. v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981).

The master found that the lenders, throughout the time prior to the sale, "did not mislead or deal unfairly with the plaintiffs." They engaged in serious efforts to avoid foreclosure through new financing, and agreed to one postponement of the sale. The basis for the master's decision was his conclusion that the lenders had failed to exercise good faith and due diligence in obtaining a fair price for the property.

This court's past decisions have not dealt consistently with the question whether the mortgagee's duty amounts to that of a fiduciary or trustee. *Compare Pearson v. Gooch*, 69 N.H. 208, 209, 40 A. 390, 390–91 (1897) *and Merrimack Industrial Trust v. First Nat. Bank of Boston*, 121 N.H. 197, 201, 427 A.2d 500, 504 (1981) (duty amounts to that of a fiduciary or trustee) *with Silver v. First National Bank*, 108 N.H. 390, 391, 236 A.2d 493, 494–95 (1967) *and Proctor v. Bank of N.H., supra* at 400, 464 A.2d at 266 (duty does not amount to that of a fiduciary or trustee). This may be an inevitable result of the mortgagee's dual role as seller and potential buyer at the foreclosure sale, and of the conflicting interests involved. *See Wheeler v. Slocinski*, 82 N.H. at 214, 131 A. at 600.

We need not label a duty, however, in order to define it. In his role as a seller, the mortgagee's duty of good faith and due diligence is essentially that of a fiduciary. Such a view is in keeping with "[t]he 'trend . . . towards liberalizing the term [fiduciary] in order to prevent unjust enrichment.'" *Lash v. Cheshire County Savings Bank, Inc.*, 124 N.H. 435, 438, 474 A.2d 980, 981 (1984) (quoting *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976)).

A mortgagee, therefore, must exert every reasonable effort to obtain "a fair and reasonable price under the circumstances," *Reconstruction &c. Corp. v. Faulkner*, 101 N.H. 352, 361, 143 A.2d 403, 410 (1958), even to the extent, if necessary, of adjourning the sale or of establishing "an upset price below which he will not accept any offer." *Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc.*, 118 N.H. at 107, 382 A.2d at 1111.

What constitutes a fair price, or whether the mortgagee must establish an upset price, adjourn the sale, or make other reasonable efforts to assure a fair price, depends on the circumstances of each case. Inadequacy of price alone is not sufficient to demonstrate bad faith unless the price is so low as to shock the judicial conscience. *Mueller v. Simmons*, 634 S.W.2d 533, 536 (Mo. App. 1982); *Rife v. Woolfolk*, 289 S.E.2d 220, 223 (W. Va. 1982); *Travelers Indem. Co. v. Heim*, 352 N.W.2d 921, 923–24 (Neb. 1984).

We must decide, in the present case, whether the evidence supports the finding of the master that the lenders failed to exercise good faith and due diligence in obtaining a fair price for the plaintiffs' property.

We first note that "[t]he duties of good faith and due diligence are distinct . . . . One may be observed and not the other, and any inquiry as to their breach calls for a separate consideration of each." *Wheeler v. Slocinski*, 82 N.H. at 213, 131 A. at 600. In order

"to constitute bad faith there must be an intentional disregard of duty or a purpose to injure." *Id.* at 214, 131 A. at 600–01.

█ There is insufficient evidence in the record to support the master's finding that the lenders acted in bad faith in failing to obtain a fair price for the plaintiffs' property. The lenders complied with the statutory requirements of notice and otherwise conducted the sale in compliance with statutory provisions. The lenders postponed the sale one time and did not bid with knowledge of any immediately available subsequent purchaser. Further, there is no evidence indicating an intent on the part of the lenders to injure the mortgagor by, for example, discouraging other buyers.

█ There is ample evidence in the record, however, to support the master's finding that the lenders failed to exercise due diligence in obtaining a fair price. "The issue of the lack of due diligence is whether a reasonable man in the [lenders'] place would have adjourned the sale," *id.* at 215, 131 A. at 601, or taken other measures to receive a fair price.

In early 1980, the plaintiffs' home was appraised at $46,000. At the time of the foreclosure sale on December 15, 1981, the lenders had not had the house reappraised to take into account improvements and appreciation. The master found that a reasonable person in the place of the lenders would have realized that the plaintiffs' equity in the property was at least $19,000, the difference between the 1980 appraised value of $46,000 and the amount owed on the mortgage totaling approximately $27,000.

At the foreclosure sale, the lenders were the only bidders. The master found that their bid of $27,000 "was sufficient to cover all monies due and did not create a deficiency balance" but "did not provide for a return of any of the plaintiffs' equity."

Further, the master found that the lenders "had reason to know" that "they stood to make a substantial profit on a quick turnaround sale." On the day of the sale, the lenders offered to sell the foreclosed property to William Dube for $40,000. Within two days after the foreclosure sale, they did in fact agree to sell it to Dube for $38,000. It was not necessary for the master to find that the lenders knew of a specific potential buyer before the sale in order to show lack of good faith or due diligence as the lenders contend. The fact that the lenders offered the property for sale at a price sizably above that for which they had purchased it, only a few hours before, supports the master's finding that the lenders had reason to know, at the time of the foreclosure sale, that they could make a substantial profit on a quick turnaround sale. For this reason, they should have taken more measures to ensure receiving a higher price at the sale.

While a mortgagee may not always be required to secure a portion of the mortgagor's equity, such an obligation did exist in this case. The substantial amount of equity which the plaintiffs had in their property, the knowledge of the lenders as to the appraised value of the property, and the plaintiffs' efforts to forestall foreclosure by paying the mortgage arrearage within weeks of the sale, all support the master's conclusion that the lenders had a fiduciary duty to take more reasonable steps than they did to protect the plaintiffs' equity by attempting to obtain a fair price for the property. They could have established an appropriate upset price to assure a minimum bid. They also could have postponed the auction and advertised commercially by display advertising in order to assure that bidders other than themselves would be present.

Instead, as Theodore DiStefano, an officer of both lending institutions, testified, the lenders made no attempt to obtain fair market value for the property but were concerned *only* with making themselves "whole." On the facts of this case, such disregard for the interests of the mortgagors was a breach of duty by the mortgagees.

Although the lenders *did* comply with the statutory requirements of notice of the foreclosure sale, these efforts were not sufficient in this case to demonstrate due diligence. At the time of the initially scheduled sale, the extent of the lenders' efforts to publicize the sale of the property was publication of a legal notice of the mortgagees' sale at public auction on November 10, published once a week for three weeks in the Nashua Telegraph, plus postings in public places. The lenders did not advertise, publish, or otherwise give notice to the general public of postponement of the sale to December 15, 1981, other than by posting notices at the plaintiffs' house, at the post office, and at city hall. That these efforts to advertise were ineffective is evidenced by the fact that no one, other than the lenders, appeared at the sale to bid on the property. This fact allowed the lenders to purchase the property at a minimal price and then to profit substantially in a quick turnaround sale.

We recognize a need to give guidance to a trial court which must determine whether a mortgagee who has complied with the strict letter of the statutory law has nevertheless violated his additional duties of good faith and due diligence. A finding that the mortgagee had, or should have had, knowledge of his ability to get a higher price at an adjourned sale is the most conclusive evidence of such a violation. *See Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc.*, 118 N.H. at 107–08, 382 A.2d at 1111.

More generally, we are in agreement with the official

Commissioners' Comment to section 3–508 of the Uniform Land Transactions Act:

> "The requirement that the sale be conducted in a reasonable manner, including the advertising aspects, requires that the person conducting the sale use the ordinary methods of making buyers aware that are used when an owner is voluntarily selling his land. Thus an advertisement in the portion of a daily newspaper where these ads are placed or, in appropriate cases such as the sale of an industrial plant, a display advertisement in the financial sections of the daily newspaper may be the most reasonable method. In other cases employment of a professional real estate agent may be the more reasonable method. It is unlikely that an advertisement in a legal publication among other legal notices would qualify as a commercially reasonable method of sale advertising."

13 Uniform Laws Annotated 704 (West 1980). As discussed above, the lenders met neither of these guidelines.

While agreeing with the master that the lenders failed to exercise due diligence in this case, we find that he erred as a matter of law in awarding damages equal to "the difference between the fair market value of the subject property . . . and the price obtained at [the] sale."

Such a formula may well be the appropriate measure where *bad faith* is found. *See Danvers Savings Bank v. Hammer*, 122 N.H. 1, 5, 440 A.2d 435, 438 (1982). In such a case, a mortgagee's conduct amounts to more than mere negligence. Damages based upon the *fair market value*, a figure in excess of a *fair* price, will more readily induce mortgagees to perform their duties properly. A *fair* price may or may not yield a figure close to *fair market value;* however, it will be that price arrived at as a result of due diligence by the mortgagee.

Where, as here, however, a mortgagee fails to exercise due diligence, the proper assessment of damages is the difference between a fair price for the property and the price obtained at the foreclosure sale. We have held, where lack of due diligence has been found, that "'the test is not "fair market value" as in eminent domain cases nor is the mortgagee bound to give credit for the highest possible amount which might be obtained under different circumstances, as at an owner's sale.'" *Silver v. First National Bank*, 108 N.H. 390, 392, 236 A.2d 493, 495 (1967) (quoting *Reconstruction &c. Corp. v. Faulkner*, 101 N.H. 352, 361, 143 A.2d 403, 410 (1958)) (citation

omitted). Accordingly, we remand to the trial court for a reassessment of damages consistent with this opinion.

 Because we concluded above that there was no "bad faith or obstinate, unjust, vexatious, wanton, or oppressive conduct," on the part of the lenders, we see no reason to stray from our general rule that the prevailing litigant is not entitled to collect attorney's fees from the loser. *Harkeem v. Adams,* 117 N.H. 687, 688, 377 A.2d 617, 617 (1977). Therefore, we reverse this part of the master's decision.

*Reversed in part; affirmed in part; remanded.*

BROCK, J., dissented; the others concurred.

BROCK, J., dissenting: I agree with the majority that a mortgagee, in its role as seller at a foreclosure sale, has a fiduciary duty to the mortgagor. I also agree with the majority's more specific analysis of that duty, including its references to the commissioners' comment to the Uniform Land Transactions Act, as well as those to *Wheeler* and other decisions of this court.

On the record presently before us, however, I cannot see any support for the master's finding that the lenders here failed to exercise due diligence as we have defined that term. I would remand the case to the superior court for further findings of fact.

Specifically, the master made no findings regarding what an "owner . . . voluntarily selling his land" would have done that the lenders here did not do, in order to obtain a fair price. The master's report stated that the lenders "did not establish an upset price or minimum bid," and that they "did not cause the property to be reappraised," but there is nothing in the record to show that an owner conducting a voluntary sale would have done these things.

Nor is there anything to indicate what an appropriate upset price would have been under the conditions present here. The master correctly noted that "[a] foreclosure sale . . . usually produces a price less than the property's fair market value," so it is virtually certain that any upset price would have been less than that amount.

I also cannot accept the majority's statement that the lenders' offer to sell the house for $40,000 constitutes support for a finding that they "should have taken more measures to ensure receiving a fair price at the sale." The offer was certainly relevant to the question of what the lenders knew about the house's value. Standing alone, however, it says nothing about what a reasonable person in the lenders' position would have done to ensure a fair price under the circumstances of this particular sale.

The master, in fact, found that the lenders "did not mislead or

deal unfairly with the plaintiffs" until the sale itself. He did not find, as the majority appears to assume, that the lenders should have adjourned the sale a second time. Although the report nowhere states specifically *what* the lenders should have done, its clear implication is that they should have made a higher bid at the foreclosure sale.

There is no authority for such a conclusion. The mortgagee's fiduciary duty extends only to its role as a *seller*. Once the mortgagee has exerted every reasonable effort to obtain a fair price (which may sometimes include setting an upset price and adjourning the sale if no bidder meets that price), it has no further obligation in its role as a potential buyer. *See generally* 1 GLENN ON MORTGAGES § 108.1, at 652–53 (1943).

As the majority notes, a low price is not of itself sufficient to invalidate a foreclosure sale, unless the price is "so low as to shock the judicial conscience." The price here was clearly not that low. *Cf. Shipp Corp., Inc. v. Charpilloz*, 414 So. 2d 1122, 1124 (Fla. Dist. Ct. App. 1982) (bid of $1.1 million was not grossly inadequate compared to a market value of between $2.8 and $3.2 million).

Because it is unclear whether the master applied the correct standard regarding the mortgagees' duty, and because the record as presently constituted cannot support a determination that the lenders violated that standard, I respectfully dissent.