Rockingham
No. 89-521

CYNTHIA A. DELELLIS

v.

PAMELA M. BURKE & *a.*

August 9, 1991

*Murphy, Graham and Gardner,* of Newburyport, Massachusetts (*Donna DiStefano Gardner* on the brief and orally), for the plaintiff.

*Beaumont, Mason & Campbell P.A.,* of Salem (*Bernard H. Campbell* on the brief and orally), for the defendant Connecticut National Mortgage Co., Inc.

BATCHELDER, J. The plaintiff, Cynthia DeLellis, appeals from an order of the Superior Court (*Mohl,* J.) granting defendant Connecticut National Mortgage Co., Inc.'s (Connecticut National) motion to dismiss her wrongful foreclosure action for lack of standing. She maintains that, as a judgment creditor of Pamela Burke, the mortgagor upon whom Connecticut National foreclosed, she has standing to assert Burke's cause of action for wrongful foreclosure

based on the theories of equitable trustee process, subrogation, and constructive trust. Further, the plaintiff argues that the holding of *Murphy v. Financial Development Corp.*, 126 N.H. 536, 495 A.2d 1245 (1985) should be extended to include foreseeable creditors of the mortgagor as parties to whom a foreclosing bank owes the duties of due diligence and good faith. We affirm the trial court's ruling.

On July 24, 1987, the plaintiff and Pamela Burke filed a joint application for a $52,700 loan with the Provident Institution for Savings of Salisbury and Amesbury, Massachusetts (Provident). Provident granted the loan, which was secured by real estate owned by the plaintiff, and the plaintiff lent the proceeds to Burke. In turn, Burke gave the plaintiff a signed note in which she stated that the loan "was for my business purposes and I am totally responsible for all payments to The Provident Institution For Savings, Amesbury, MA." Burke apparently used the money for improvements to property she owned in Kensington, New Hampshire.

Burke took out another loan from Connecticut National, the successor by consolidation of Provident, on November 2, 1987. This loan, in the amount of $202,500, was secured by a mortgage on Burke's Kensington property which contained a power of sale in the event of default. Burke had defaulted on both loans by September of 1988. On September 7, 1988, she filed a voluntary chapter 13 bankruptcy petition. Thereafter the plaintiff, unaware that Burke had filed for bankruptcy, filed a writ of assumpsit against Burke in an attempt to recover the debt Burke owed her.

Connecticut National requested and, on November 23, 1988, received relief from the bankruptcy court from the bankruptcy code's automatic stay provisions and began foreclosure proceedings. A foreclosure sale of the Kensington property was scheduled for December 30, 1988, at 11:00 a.m. Pursuant to RSA 479:25, II (Supp. 1990), Connecticut National gave notice of the sale to all parties who held liens on the property that were recorded at least thirty days before the sale. Although the plaintiff had obtained an *ex parte* attachment on the property, she was not given notice of the foreclosure sale, because the attachment was not recorded until December 23, 1988, only seven days before the sale.

Burke, the mortgagor, attempted to enjoin the sale. The Superior Court (*Gray*, J.) issued an injunction approximately seventeen minutes before the sale was about to begin, but Connecticut National did not receive notice of the court's order in time to postpone the sale. Connecticut National was the only bidder at the sale and bought the property for $232,125. No excess proceeds resulted from the sale.

The plaintiff subsequently filed a wrongful foreclosure action on May 30, 1989. Connecticut National moved to dismiss this action, arguing that it owed no legal duty to the plaintiff, and that the plaintiff therefore had no standing. After a hearing held on September 15, 1989, the Court (*Mohl,* J.) granted Connecticut National's motion, ruling that it did not read *Murphy v. Financial Development Corp.*, 126 N.H. 536, 495 A.2d 1245,

> "to extend a duty beyond the mortgagor to provide protection to creditors of the mortgagor. Nor does this Court find that DeLellis is subrogated to Burke's rights through a theory of equitable subrogation or that she is entitled to an accounting on a constructive trust theory, as no fiduciary or confidential relationship existed between DeLellis and Connecticut [National]."

The court also denied the plaintiff's motion for reconsideration. In the meantime, Burke's bankruptcy petition was dismissed, and the plaintiff obtained a judgment against Burke in the amount of $55,115.86.

On appeal, the plaintiff presents the same arguments made below; namely, that she has standing to assert Burke's rights against Connecticut National based on the theories of equitable trustee process, subrogation, and constructive trust, as well as the holding of *Murphy v. Financial Development Corp. supra.* We will address each of these arguments in turn, beginning with the plaintiff's equitable trustee process argument, to determine whether she has sufficiently demonstrated her right to claim relief. *See Ossipee Auto Parts v. Ossipee Planning Bd.*, 134 N.H. 401, 403–404, 593 A.2d 241, 242 (1991).

The plaintiff maintains that Burke has a cause of action against Connecticut National for wrongful foreclosure which constitutes a "chose in action" that she may attach, using trustee process under RSA chapter 512, in order to satisfy the debt Burke owes her. She appears to have made this argument during the hearing held on Connecticut National's motion to dismiss, thus preserving the issue for appeal. Connecticut National, on the other hand, contends that Burke's potential wrongful foreclosure claim does not constitute property that is attachable under the trustee process statute, RSA chapter 512.

■■ Trustee process is a statutory procedure by which a judgment creditor, in order to satisfy a debt owed him by a debtor, may attach either property owned by the debtor that is presently held by

a third party, or the debtor's right to receive property from a third party. *See* RSA ch. 512; R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 562 (1984); *see also Pappalardo v. Bank of Boston, Essex, N.A.*, 133 N.H. 855, 859–60, 587 A.2d 251, 253 (1991). In order to invoke this statutory procedure, a party must comply with the threshold procedural requirement that a trustee writ be filed. RSA 512:3; *see also* R. WIEBUSCH, *supra* at §§ 614–15. The plaintiff has not filed such a writ, and thus has no standing to maintain her action against Connecticut National based on the theory of equitable trustee process. Even had the plaintiff filed a writ in accordance with the statute, it is highly questionable whether Burke's alleged cause of action would constitute property subject to the trustee process statute. *See Brahmey v. Rollins*, 87 N.H. 290, 291, 179 A. 186, 188 (1935); *see also* Annotation, *Unliquidated Claims of Damage in Tort as Subject of Garnishment*, 93 A.L.R. 1088, 1088–89 (1934).

■■ Nor does the plaintiff have standing under the theories of subrogation or constructive trust.

> "The doctrine of subrogation presupposes *the payment of a debt by a party secondarily liable therefor,* who thereby acquires an equitable right to be reimbursed by the principal debtor *and for the purpose of making this right effective is invested with all the rights which the creditor had against him (the principal debtor)."*

*McCullough v. Company*, 90 N.H. 409, 411, 10 A.2d 245, 247 (1939) (emphasis added). Here, there is nothing in the record before us to show that the plaintiff was secondarily liable for and paid Burke's debt to Connecticut National so that the doctrine of subrogation applies. Moreover, even assuming that the doctrine of subrogation were applicable in this case, the plaintiff would be subrogated to Connecticut National's rights against Burke, not Burke's rights, if any, against Connecticut National. *See, e.g., Barbin v. Moore*, 85 N.H. 362, 159 A. 409 (1932) (holding that the beneficiaries of the decedent's life insurance policy, the proceeds of which were used by the defendant administrator of the decedent's estate to pay the decedent's loan from the bank, were subrogated to the bank's right to receive the loan amount, and thus could assert this cause of action against the administrator); *see also Security Fence Co. v. Association*, 101 N.H. 190, 192, 136 A.2d 910, 912 (1957) (stating that "the purpose of subrogation is to place the responsibility where it ultimately should rest by compelling payment by the one who 'in good

conscience ought to pay it'" (quoting *Standard Accident Ins. Co. v. Pellecchia*, 15 N.J. 162, 171, 104 A.2d 288, 292 (1954))).

■■ As for the plaintiff's constructive trust argument, the trial court correctly ruled that no constructive trust can be imposed absent a confidential or fiduciary relationship between the plaintiff and Connecticut National. *See Higgins v. Higgins*, 125 N.H. 806, 809, 486 A.2d 294, 297 (1984). *New Hampshire Business Development v. F.R. Lepage Bakery*, 832 F.2d 7 (1st Cir. 1987), which the plaintiff cites in support of her argument, is distinguishable from the present case in that the relationship of the parties in that case was governed by sections 9–312 and 9–504 of the New Hampshire Uniform Commercial Code. *Id.* at 10.

Finally, the plaintiff contends that this court's holding in *Murphy v. Financial Development Corp.*, 126 N.H. 536, 495 A.2d 1245, should be extended to allow a creditor of the foreclosed-upon mortgagor to assert the mortgagor's rights when the mortgagor has no incentive to do so or is bankrupt. In *Murphy* we held that a mortgagee conducting a foreclosure sale acts essentially as a fiduciary of the mortgagor, to whom the mortgagee owes both the duties of good faith and due diligence, and the obligation to comply with the requirements of RSA 479:25 (1983 and Supp. 1990). *Id.* at 541, 495 A.2d at 1249. The plaintiff argues that extending the holding of *Murphy* would not change the scope of the duties owed by the mortgagee, but merely the class of persons to whom it owes these duties.

■ The duties of good faith and due diligence owed by the foreclosing mortgagee, which in most cases is a bank, to the mortgagor generally arise from the contractual relationship which exists between the two parties. *See* Recent Development, *Implied Covenants of Good Faith and Fair Dealing: Loose Cannons of Liability for Financial Institutions?*, 40 VAND. L. REV. 1197, 1201 (1987). These duties might also arise by virtue of a relationship between the parties that is imposed by statute. Conversely, it has been held that banks do not owe a fiduciary duty to parties with whom they have had no direct dealings. *See* Annotation, *Bank's Liability for Breach of Implied Contract of Good Faith and Fair Dealing*, 55 A.L.R. 4th 1026, 1033 (1987). In the present case, the plaintiff does not allege that she had either a contractual or a statutory relationship to, or any direct dealings with, Connecticut National. Thus, there is no basis upon which to find that Connecticut National owed the plaintiff the duties of good faith and due diligence in conducting the foreclosure sale of Burke's Kensington property. Accordingly, we decline

to extend the holding of *Murphy* in this instance and hold that the plaintiff has no standing to prosecute her wrongful foreclosure action on this theory.

■ Having found that the plaintiff does not have standing on any of the grounds asserted, we affirm the trial court's decision granting Connecticut National's motion to dismiss the plaintiff's action.

*Affirmed.*

All concurred.