Sullivan
No. 88-281

BASCOM CONSTRUCTION, INC.

v.

CITY BANK AND TRUST

July 30, 1993

*Buckley and Zopf,* of Claremont (*Michael A. Fuerst* on the brief and orally), for the plaintiff.

*Clauson, Smith & Whelan*, of Hanover (*K. William Clauson* on the brief and orally), for the defendant.

*Stark & Peltonen*, of Manchester (*Rodney L. Stark* on the brief), by brief for Associated Builders and Contractors, Inc., as *amicus curiae*.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Steven J. McAuliffe* and *Anne L. Scheer* on the brief), by brief for New Hampshire Bankers Association, as *amicus curiae*.

BATCHELDER, J. The plaintiff, Bascom Construction, Inc. (Bascom), appeals from a decision of the Superior Court (*DiClerico*, J.), approving the report of a Master (*R. Peter Shapiro*, Esq.). The report found that Bascom, as a mechanic's lienholder, lacked standing to challenge the sufficiency of the price obtained by the defendant, City Bank and Trust (City Bank), at a foreclosure sale. City Bank cross-appeals, arguing that a separate nonconstruction loan secured by a first mortgage enjoyed priority over the plaintiff's mechanic's lien. We reverse and remand.

This appeal has a lengthy history before this court. The case was originally argued in September 1989. Because Justice Johnson recused himself and the remaining justices were split in their decision, the decision below was affirmed by an equally divided court. On April 26, 1990, the plaintiff's motion for reconsideration was granted. Following reargument and pending decision by this court, on March 29, 1991, the State bank commissioner declared City Bank insolvent and closed the bank. The Federal Deposit Insurance Corporation (FDIC) was appointed receiver. The FDIC then removed the case to federal district court. Bascom subsequently successfully moved to remand to this court, arguing that only New Hampshire law was necessary to decide the underlying dispute. *Bascom Const., Inc. v. Federal Deposit Ins. Corp.*, 777 F. Supp. 123 (D.N.H. 1991). Upon reconsideration, the district court reversed its remand order. *Bascom Const., Inc. v. Federal Deposit Ins. Corp.*, 779 F. Supp. 206 (D.N.H. 1991). The FDIC, however, candidly pointed out to the district court that remand was proper. Consequently, the district court granted the FDIC's motion to vacate its order on reconsideration and remanded to this court. *Bascom Const., Inc. v. Federal Deposit Ins. Corp.*, 785 F. Supp. 277 (D.N.H. 1992).

The facts are not in dispute. Bascom provided labor and materials to the mortgagor, Stavros Kritikos, owner and developer of a fast-food restaurant located on Washington Street in Claremont. Kritikos

did not fully pay Bascom for the value of the labor and materials provided, leaving an outstanding balance in excess of $63,000. After unsuccessful demands for payment, Bascom filed suit and perfected a mechanic's lien on the subject property in the amount of $80,000. This lien became a matter of public record on February 12, 1986.

In addition to the mechanic's lien, the property was subject to two mortgages held by City Bank, the first in the amount of $280,000, dated June 28, 1985, the second in the amount of $90,000, dated December 19, 1985. It is important to note that the first mortgage secured two notes, one for $230,000 for labor and materials, and another for $50,000 to purchase equipment. The second mortgage secured a single note for $90,000 for labor and materials. The second mortgage also included, as additional security, the mortgagor's private residence.

A salient aspect of the unfolding events was the fact that on the day of the foreclosure, City Bank and the mortgagor entered into a written agreement in which, among other things, the mortgagor waived any rights or claims arising out of the foreclosure sale should City Bank be the successful bidder. The pertinent language of this agreement is instructive as to the parties' intent:

> "3. *Future Sale*. Assuming that the Bank is the high bidder at the Foreclosure Sale of the commercial real estate, then it is the intention of Kritikos and the Bank to attempt to market the real estate and the personal property together for substantially more than the appraised fair market value. Both parties believe that it is possible that significantly more than appraised fair market value might be obtained in a private sale during the Summer of 1986, where the Bank is prepared to give a warranty deed to a prospective buyer.
>
> . . . .
>
> 4. *Foreclosure on Home*. The Kritikos acknowledge receipt of a notice of the intent to foreclose on their home. The Bank shall hold off on the publication of notice of this foreclosure until the earlier of September 1, 1986, or the date of closing on the sale of the commercial real estate.
>
> . . . .
>
> 5. *Cooperation*. The Kritikos shall cooperate with the Bank as to all matters covered by this Agreement. The Kritikos waive any claims or complaints as to the manner of sale of the commercial real estate and of the personal property."

City Bank foreclosed on the subject property, and on May 13, 1986, a public foreclosure sale was conducted. Notice of the sale was given in compliance with RSA 479:25 (1992). Bascom received notice and attended the foreclosure sale but did not bid. City Bank purchased the property at the foreclosure sale for $200,000, which, according to City Bank, was the appraised value of the property.

After the foreclosure, Bascom filed a petition for declaratory judgment asserting priority of its perfected mechanic's lien. The superior court entered partial summary judgment in favor of City Bank, finding that City Bank's first mortgage was entitled to priority over Bascom's mechanic's lien in the amount of $210,031.87. Reserved for trial were two issues: (1) whether an additional $50,000 paid by City Bank to Bascom pursuant to the second mortgage note was also entitled to priority; and (2) whether Bascom had standing to challenge the sufficiency of the price obtained at the foreclosure sale.

At trial, the master concluded that City Bank was entitled to priority to the extent of $210,031.87 plus the additional $50,000 paid to Bascom from proceeds of the second mortgage, totaling $260,031.87. The master also found that Bascom did not have standing to challenge the sufficiency of the price obtained at the foreclosure sale. Further, the master found that the fair value of the property was $290,000 and that the $200,000 purchase price would "shock the judicial conscience." The master failed to address specifically the priority of a separate $50,000 equipment loan under the first mortgage, not raised or addressed in the previous hearing on the plaintiff's motion for declaratory judgment, now the subject of City Bank's cross-appeal.

■■ In *Murphy v. Financial Development Corp.*, 126 N.H. 536, 495 A.2d 1245 (1985), we held that, in the context of a foreclosure sale, the mortgagee owes the mortgagor a fiduciary duty of good faith and due diligence. *Id.* at 541, 495 A.2d at 1249. This duty requires the mortgagee to take all reasonable and necessary steps under the circumstances to insure that a fair and reasonable price is obtained. *See id.* To secure a fair and reasonable price, the mortgagee may be required to set a reserve price or even adjourn the sale if the bids are too low. *See id.* at 541, 495 A.2d at 1250. A low price, in and of itself, will not be sufficient to demonstrate the requisite bad faith needed to invalidate an otherwise legitimate sale, unless that price is "so low as to shock the judicial conscience." *Id.*

The thrust of Bascom's claim is its effort to stand in the mortgagor's shoes with respect to the rights existing by reason of *Murphy*. In *DeLellis v. Burke*, 134 N.H. 607, 598 A.2d 203 (1991), we

declined to extend the holding in *Murphy* to allow a creditor of the foreclosed-upon mortgagor to challenge the propriety of the foreclosure. *Id.* at 612–13, 598 A.2d at 206. We held that, absent a contractual or statutory relationship to, or direct dealings with, the junior creditor, the mortgagee's fiduciary duties of good faith and due diligence did not extend beyond the mortgagor. *Id.* at 612, 598 A.2d at 206.

A mechanic's lienholder is, by nature, a unique type of junior creditor. His or her lien is authorized to secure payment for materials and labor that have been supplied to directly enhance the value of the mortgaged property. *See Innie v. W & R, Inc.*, 116 N.H. 315, 317, 359 A.2d 616, 618 (1976). As such, the mechanic's lienholder differs significantly from other junior creditors.

The nature of the mechanic's lien mandates that certain protections be afforded to those who provide material and labor to enhance the property of others. Indeed, the legislature has recognized this unique status and established the priority of mechanic's liens over construction mortgages, to the extent that mortgage loan proceeds have not been disbursed to suppliers of materials or labor. *See* RSA 447:12-a (1991).

■■ Nevertheless, *Murphy* rights do not extend to mechanic's lienholders. The underpinning of *Murphy* is the mortgagee's fiduciary duty to protect the interests of the mortgagor through the exercise of good faith and due diligence. *Murphy*, 126 N.H. at 541, 495 A.2d at 1249. A fiduciary relationship has been defined to exist "wherever influence has been acquired and abused or confidence has been reposed and betrayed." *Lash v. Cheshire County Savings Bank*, 124 N.H. 435, 438, 474 A.2d 980, 981 (1984) (quotation omitted). No such duty exists between the mortgagee and a mechanic's lienholder. The foreclosing mortgagee's duty to a mechanic's lienholder has been established by the legislature. Under our statutory framework, the foreclosing mortgagee has a duty to give notice of the foreclosure sale to all lienholders who have properly recorded their liens at least thirty days before the date of the sale. RSA 479:25, II (1992). Having received proper notice, the lienholders have the opportunity to appear at the foreclosure sale to protect their interests in the property. This procedure provides adequate protection to a mechanic's lienholder where there has been a regularly conducted, noncollusive foreclosure sale.

■■ Where the mechanic's lienholder can prove by a preponderance of the evidence that there was collusion between the mort-

gagor and the mortgagee amounting to fraud in the conduct of the sale, however, the lienholder should not be precluded from challenging it. *Cf. In re Madrid*, 21 B.R. 424, 427 (Bankr. 9th Cir. 1982), *cert. denied*, 469 U.S. 833 (1984) (applying similar standard in bankruptcy proceedings). This challenge does not arise from the mortgagor's rights under *Murphy*. A mechanic's lienholder cannot assert the rights of the mortgagor absent an assignment. *See, e.g., In re Dodge-Freedman Poultry Co.*, 148 F. Supp. 647, 650–51 (D.N.H. 1956). Rather, this right exists at common law and is independent of any rights created in the mortgagor under *Murphy*.

We now turn to the case before us to determine whether Bascom may challenge the conduct of the foreclosure sale. Just prior to the sale, City Bank and Kritikos reached an agreement approved by counsel for both parties that the $200,000 appraisal represented the fair value of the property. Additionally, City Bank and Kritikos agreed that if City Bank were the high bidder at the sale, Kritikos, in exchange for his aid in facilitating a resale, would get credit for any higher price subsequently obtained. City Bank also agreed to give a subsequent purchaser a warranty deed. In exchange for these considerations and to delay foreclosure on his personal residence, Kritikos waived any rights under *Murphy* to challenge the propriety of the foreclosure sale.

The waiver by Kritikos of his *Murphy* rights, presumably unknown to Bascom, can be claimed to have provided a lessened incentive on the part of City Bank to place a higher bid on the property. Where, as here, the mortgagor waived *Murphy* rights in a manner which could have had an adverse effect on the bidding process, and where collusion or fraud may in that regard be proven, the mechanic's lienholder has standing to challenge the foreclosure process. Accordingly, we remand to the trial court for a determination of claims, if any, that Bascom may have by reason of the Kritikos waiver.

City Bank cross-appeals, maintaining that RSA 447:12-a (1991) does not give priority to Bascom's mechanic's lien over a separate loan made by City Bank, although secured by the same construction mortgage, where the proceeds were used to purchase equipment rather than finance construction. Because the master did not rule on the priority of the $50,000 equipment loan, we remand to the superior court for its determination, in the first instance, of the loan's priority.

*Reversed and remanded.*

478

JOHNSON, J. did not sit; DUNFEY, C.J., superior court justice, sat by special assignment, under RSA 490:3, but died prior to decision; the others concurred.