**Richard P. CROWLEY, individually and as Trustee of 1035 Mammoth Trust**

v.

**F.D.I.C.**

**Civ. No. 92–315–SD.**

United States District Court, D. New Hampshire.

Dec. 1, 1993.

---

7. *Compare Arlington Heights, supra.*

8. *See Robinson v. California, supra.*

Dennis N. Perreault, Concord, NH, Richard L. Binder, Boston, MA, for plaintiff.

Simon C. Leeming, Concord, NH, for defendant.

## ORDER

DEVINE, Senior District Judge.

This action arises out of a banking relationship between Richard P. Crowley and Amoskeag Bank which dates back to 1986.

On October 10, 1991, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver and liquidating agent of Amoskeag Bank pursuant to an order of the New Hampshire Banking Commissioner. On or about January 24, 1992, plaintiff Crowley filed a Proof of Claim with FDIC in which he claimed to have suffered damages as a result of a series of wrongful actions by Amoskeag Bank. In particular, Crowley alleged that Amoskeag Bank

> has interfered with my contracts and advantageous relations with Thomas Bullock, Robert Dickson and Bank of Boston; improperly disseminated confidential information concerning my financial condition; acted in violation of its obligation, as mortgagee, to exercise good faith and due diligence to protect my interest, as mortgagor, in real property; acted in violation of its implied obligations of good faith and fair dealing; and defamed me.

Proof of Claim at 1 (attached to Complaint).[1]

By a Notice of Disallowance of Claim dated April 27, 1992, FDIC denied Crowley's Proof of Claim. Thereafter, on June 26, 1992, Crowley filed suit on his Proof of Claim in this court pursuant to 12 U.S.C. § 1821(d)(6). Presently before the court are defendant FDIC's motion for summary judgment and plaintiff's objection thereto.

*Background*

According to plaintiff, "[t]his action concerns, in principal part, a mortgage loan for an eight unit building at 1035 South Mam-

moth Road, Manchester." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 4.

On or about June 3, 1986, Amoskeag Bank loaned Crowley $520,000 to purchase said property. The promissory note signed by Crowley to obtain the loan was secured by a first mortgage on the property, also dated June 3, 1986.

Sometime in 1990, Crowley became unable to continue making the full amount of his loan payments. He then allegedly "made various proposals to Amoskeag in an effort to reach an accommodation with Amoskeag that would result in a commercially reasonable disposition of said loan." Crowley Affidavit at ¶ 10. However, none of these proposals were accepted by Amoskeag Bank. Instead, by letter dated June 5, 1991, the bank notified Crowley that "failure to pay principal and interest due under the Note constitutes an event of default under the Mortgage for which the Bank may exercise any and all right available to it, including the statutory power of sale contained in the Mortgage." Crowley Affidavit, Exhibit F. In addition, because there remained "outstanding interest and principal due on account," Amoskeag Bank demanded that Crowley pay the note in full by July 1, 1991. *Id.*

Amoskeag Bank subsequently scheduled a foreclosure sale on the 1035 South Mammoth Road property for September 30, 1991. Crowley responded by filing an Ex–Parte Petition to Enjoin Foreclosure Sale in Hillsborough County (New Hampshire) Superior Court. Said petition was granted on September 27, 1991, and as a result, the previously scheduled foreclosure sale did not take place. In addition, no other attempt to sell the property at a foreclosure sale was made prior to October 10, 1991, the date FDIC was appointed as receiver and liquidating agent of Amoskeag Bank.

*Discussion*

In moving for summary judgment, FDIC asserts, as to each of Crowley's claims, (1)

---

1. In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, plaintiff argues for the first time that FDIC engaged in this same series of wrongful conduct following its takeover of Amoskeag Bank. Plaintiff's com-

plaint and the Proof of Claim incorporated therein only allege wrongdoing on the part of Amoskeag Bank. As plaintiff's pleadings fail to allege any wrongdoing on the part of FDIC, the court declines to address such claims here.

that plaintiff has failed to set forth sufficient material facts to show that there is a genuine issue for trial, and (2) that plaintiff's claims are barred by the doctrine set forth in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its statutory counterpart, 12 U.S.C. § 1823(e).

## Summary Judgment Standard

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Where, as here, the moving party does not have the burden of proof at trial, the movant's summary judgment burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In response, the nonmovant "may not rest upon the mere allegations or denials of [his] pleading." Rule 56(e), Fed.R.Civ.P. Instead, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Id. See also Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) ("On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion."), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

Furthermore, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra,* 477 U.S. at 322, 106 S.Ct. at 2552.

2. According to the complaint, Bullock and Dickson are stockholders of Amoskeag Beverages, Inc., of Manchester, New Hampshire, which also had a banking relationship with Amoskeag Bank.

## Tortious Interference with Contractual Relations

In his complaint, Crowley alleges that Amoskeag Bank tortiously interfered with his contractual relations with Thomas Bullock, Robert Dickson, and Bank of Boston by improperly disclosing confidential information to said parties.[2] Proof of Claim at 1–2.

Under New Hampshire law,

The elements necessary successfully to plead a cause of action for tortious interference with contractual relations are 'that (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference.'

*Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46, 534 A.2d 706, 709 (1987) (quoting *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 988 (1st Cir.1983)) (emphasis added).

The evidence submitted by Crowley in the Proof of Claim and the deposition transcript of former Amoskeag Bank Loan Workout Officer Douglas W. Worden is sufficient to establish, under Rule 56(e), that he had economic relationships with the named parties and that Amoskeag Bank knew of such relationships. As to whether Amoskeag Bank "intentionally and improperly interfered" with those relationships, plaintiff's evidence consists of the following statements in his Proof of Claim:

I believe that Amoskeag tortiously interfered with my obtaining repayment of $300,000 my pension fund loaned to Thomas A. Bullock of Manchester, New Hampshire and Robert W. Dickson of Manchester, New Hampshire. I am involved in litigation with Messrs. Bullock and Dickson concerning their obligation to repay the loan and the parties have attempted to settle that litigation. I believe that Messrs. Bullock and Dickson are stock-

Proof of Claim at 1–2. Bank of Boston is the bank which "financed [Crowley's] law practice and home for many years." *Id.* at 2.

holders of Amoskeag Beverages, Inc. of Manchester, New Hampshire. Amoskeag made substantial loans to Amoskeag Beverages. I believe that Amoskeag advised Messrs. Bullock and Dickson that if they repaid the money my pension fund loaned to them or made any payments to me or my pension fund, Amoskeag would take action adverse to its present and future banking relationship with Amoskeag Beverages. As a result, I have been unable to resolve that action and obtain repayment from Messrs. Bullock and Dickson.

Proof of Claim at 1–2.

Because Crowley has sworn to the statements made in his Proof of Claim, the court treats it as a verified complaint. Accordingly, like a verified complaint, the Proof of Claim will

> be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e) (in summary judgment milieu, affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

*Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991).

Applying this rule to the Proof of Claim, the court finds that the statements based solely upon Crowley's "belief" do not meet the requirements of Rule 56(e). *See, e.g., Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950) (statements "made upon information and belief ... do[ ] not comply with Rule 56(e)"), *overruled on other grounds, Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). As plaintiff has submitted no other evidence to establish a genuine issue as to whether Amoskeag Bank intentionally and improperly interfered with Crowley's contractual relations, defendant's motion for summary judgment as to said claim must be granted.

*Improper Dissemination of Confidential Information*

■ In his second claim, Crowley alleges that Amoskeag Bank "improperly dissemi-nated confidential information concerning [his] financial condition" to Thomas A. Bullock and Robert W. Dickson and to Bank of Boston. Proof of Claim at 1. The only evidence submitted by Crowley in support of this claim are the following statements in his sworn Proof of Claim:

> I have periodically provided Amoskeag with highly confidential financial information, including personal financial statements and copies of income tax returns, pursuant to express and implied agreements that Amoskeag would maintain the confidentiality of such information. I believe that Amoskeag improperly disclosed confidential information concerning my financial condition to Messrs. Bullock and Dickson.
>
> I believe that Amoskeag disclosed confidential information concerning my financial condition to Bank of Boston. Bank of Boston, which had financed my law practice and home for many years, suddenly demanded substantial additional security from me, including an additional mortgage on my home.

Proof of Claim at 2.

The statements based on Crowley's "belief" are insufficient, under Rule 56(e), to establish a genuine issue as to whether Amoskeag Bank improperly disclosed confidential information to Bullock and Dickson and to Bank of Boston. *Sheinkopf, supra,* 927 F.2d at 1262; *Automatic Radio, supra,* 339 U.S. at 831, 70 S.Ct. at 896. Therefore, FDIC is entitled to summary judgment on Crowley's second claim.

*Good Faith and Due Diligence*

■ In his third claim, Crowley alleges that Amoskeag Bank "acted in violation of its obligation, as mortgagee, to exercise good faith and due diligence to protect [his] interest, as mortgagor, in real property." Proof of Claim at 1.

■ Under New Hampshire law, "a mortgagee conducting a foreclosure sale acts essentially as a fiduciary of the mortgagor, to whom the mortgagee owes both the duties of good faith and due diligence...." *DeLellis v. Burke,* 134 N.H. 607, 612, 598 A.2d 203, 205 (1991) (citing *Murphy v. Financial Dev.*

*Corp.,* 126 N.H. 536, 541, 495 A.2d 1245, 1249 (1985)). "The duties of good faith and due diligence owed by the foreclosing mortgagee, which in most cases is a bank, to the mortgagor generally arise from the contractual relationship which exists between the two parties." *Id.,* 134 N.H. at 612, 598 A.2d at 206.

■ The mortgagee's "'duties of good faith and due diligence are distinct.'" *Murphy, supra,* 126 N.H. at 541, 495 A.2d at 1249 (quoting *Wheeler v. Slocinski,* 82 N.H. 211, 213, 131 A. 598, 600 (1926)). In order to establish bad faith "there must be an intentional disregard of duty or purpose to injure," whereas to determine whether there has been a lack of due diligence, "the issue . . . is whether a reasonable man in the [lenders'] place would have adjourned the sale . . . or taken other measures to receive a fair price." *Murphy, supra,* 126 N.H. at 542, 495 A.2d at 1250 (internal quotations omitted).

Here, it is undisputed that a mortgage and security agreement existed between plaintiff and Amoskeag Bank. Accordingly, Amoskeag Bank was obligated, as mortgagee, to

exert every reasonable effort to obtain 'a fair and reasonable price under the circumstances,' *Reconstruction & c. Corp. v. Faulkner,* 101 N.H. 352, 361, 143 A.2d 403, 410 (1958), even to the extent, if necessary, of adjourning the sale or of establishing 'an upset price below which he will not accept any offer.' *Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc.,* 118 N.H. [103,] 107, 382 A.2d [1108,] 1111 [ (1978) ].

*Murphy, supra,* 126 N.H. at 541, 495 A.2d at 1249–50.

However, in arguing that Amoskeag Bank did not attempt to obtain a fair and reasonable price for the 1035 South Mammoth Road property or to protect his interest, Crowley fails to acknowledge that Amoskeag Bank never sold the property in question. Instead, as Crowley himself points out, his petition to enjoin the foreclosure sale was granted by the Hillsborough County Superior Court on September 27, 1991. As a result, the foreclosure sale scheduled for September 30, 1991, did not take place.

Thus, while the evidence submitted by Crowley provides information relating to FDIC's 1992 sale of the 1035 South Mammoth Road property, it fails to show that Amoskeag Bank breached its duties of good faith and due diligence with respect to the sale of said property. Moreover, Crowley has failed to submit any evidence to show that Amoskeag Bank acted with an "intentional disregard of duty or a purpose to injure." Accordingly, the court finds that the evidence submitted by Crowley fails to create a genuine issue as to whether Amoskeag Bank violated its duties of good faith and due diligence. Therefore, the court must grant defendant's motion for summary judgment as to said claim.

*Good Faith and Fair Dealing*

■ Crowley's fourth claim is that Amoskeag Bank "acted in breach of its covenant of good faith and fair dealing by failing to agree to [his] reasonable proposals to resolve issues concerning the mortgage of the 1035 Property." Proof of Claim at 3.

"Under New Hampshire law, every contract contains an implied covenant of good faith performance and fair dealing." *Renovest Co. v. Hodges Dev. Corp.,* 135 N.H. 72, 81, 600 A.2d 448, 454 (1991) (citing *Seaward Constr. Co. v. City of Rochester,* 118 N.H. 128, 129, 383 A.2d 707, 708 (1978)). New Hampshire courts "have relied on such an implied duty in three distinct categories of contract cases. . . ." *Centronics Corp. v. Genicom Corp.,* 132 N.H. 133, 139, 562 A.2d 187, 190 (1989). The third category, which is at issue here, encompasses cases dealing "with limits on discretion in contractual performance." *Id.* In such cases, "the obligation of good faith performance . . . exclud[es] behavior inconsistent with common standards of decency, fairness, and reasonableness, and with the parties' agreed-upon common purposes and justified expectations." *Id.* at 141, 562 A.2d at 191.

The duties Amoskeag Bank is alleged to have breached arise from the note and the mortgage and security agreement entered into by Crowley and the bank. *See Centronics, supra,* 132 N.H. at 143–44, 562 A.2d at 193. Yet, in opposing FDIC's motion for summary judgment, Crowley has failed to submit a copy of the note or the mortgage and security agreement. Without such evi-

dence, the court cannot find that Amoskeag Bank's exercise of discretion under those agreements, with respect to Crowley's proposals, exceeded the limits of reasonableness.

In light of Crowley's failure to make a showing sufficient to establish a genuine issue as to whether Amoskeag Bank breached its duty of good faith performance and fair dealing, FDIC is entitled to summary judgment as to said claim.

*Defamation*

Crowley's claim of defamation encompasses (1) a number of allegedly defamatory statements which appear in a "Report of Apparent Crime" submitted by Amoskeag Bank to FDIC;[3] (2) a statement made by Timothy Schiavoni, then-counsel for Amoskeag Bank, to Crowley's counsel, Paul Semple; and (3) a number of statements made by Amoskeag Bank employee Jay Levy in pleadings filed in the case of *Amoskeag Bank v. Richard P. Crowley*, No. 91–843 (Barnstable (Massachusetts) Superior Court filed July 19, 1991).

> "To create liability for defamation there must be: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

8 Richard B. McNamara, *New Hampshire Practice* § 2 (1988) (quoting Restatement (Second) of Torts § 558); *see also Duchesnaye v. Munro Enterprises, Inc.*, 125 N.H. 244, 480 A.2d 123 (1984)).

■ The "Report of Apparent Crime" cited by Crowley as containing defamatory statements is a report that Amoskeag Bank is required to file "[w]henever it appears that a criminal violation of the United States Code involving or affecting the assets or affairs of [the bank] has been committed or attempted." 12 C.F.R. § 353.1(a). The bank is required to "report the apparent violation to the appropriate field office of the Federal

Bureau of Investigation, to the appropriate office of the United States Attorney, and to the regional director (Division of Bank Supervision (DBS)) of the FDIC region in which the bank is located." *Id.* As such, the Report of Apparent Crime is akin to a statement made "to a prosecuting authority as part of the initial steps in a judicial proceeding." *McGranahan v. Dahar*, 119 N.H. 758, 769, 408 A.2d 121, 128 (1979). Since such statements are "entitled to absolute immunity from an action for defamation," *id.*, the court finds that Crowley's claim of defamation with respect to such statements does not survive FDIC's motion for summary judgment. *See also* Restatement (Second) of Torts § 592 (1976) ("One who is required by law to publish defamatory material is absolutely privileged to publish it.").

■ Crowley also asserts a claim of defamation based upon a statement allegedly made by Timothy Schiavoni to Attorney Paul Semple. With respect to this claim, Crowley states that "[a]fter the foreclosure sale was enjoined, Mr. Semple advised me that Mr. Schiavoni had told him that I had misappropriated rent monies from the 1035 Property. I never misappropriated rent monies from the 1035 Property." Crowley Affidavit at ¶ 14. FDIC argues that said statements "were not slanderous, do not amount to defamation and are not actionable," and that "such communications are in fact privileged, with respect to the then going civil litigation, and as a matter of law." FDIC's Memorandum of Law in Support of Motion for Summary Judgment at 12.

■ Under New Hampshire law, "[i]t is well established that statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions, provided they are pertinent to the subject of the proceedings." *Pickering v. Frink*, 123 N.H. 326, 329, 461 A.2d 117, 119 (1983) (citing *McGranahan, supra*, 119 N.H. at 763, 408 A.2d at 124). *See also* Restatement (Second) of Torts § 586 (1976) ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communica-

---

**3.** The Report of Apparent Crime concerns the activities of Crowley's son-in-law, Darrell Glencross, former Senior Vice President and head of the Private Banking Group at Amoskeag Bank. Affidavit of Richard P. Crowley at ¶¶ 2–3 and Exhibit A.

tions preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."). "The question of pertinence or relevance is one of law...." *McGranahan, supra,* 119 N.H. at 766, 408 A.2d at 126. "A statement is presumed relevant unless the person allegedly defamed demonstrates that it was 'so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety.'" *Id.* (quoting *Scott v. Statesville Plywood & Veneer Co.,* 240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954)).

Here, the statement in question was made by Amoskeag Bank's counsel to Crowley's counsel as part of an ongoing judicial proceeding between the two parties. Furthermore, the statement is relevant to the subject matter of that proceeding, namely the 1035 South Mammoth Road property. Accordingly, the court finds that the statement made by Schiavoni is absolutely privileged and cannot serve as the basis for a defamation claim.

■ Finally, Crowley alleges that certain statements made by Amoskeag Bank employee Jay Levy in pleadings filed in the case of *Amoskeag Bank v. Richard P. Crowley, supra,* are defamatory.

■ Under New Hampshire law, "[t]he question of whether an absolute privilege exists with respect to [statements in civil pleadings] turns on whether the pleaded allegations were pertinent or relevant to the civil action in which they were filed." *McGranahan, supra,* 119 N.H. at 766, 408 A.2d at 126. Based on the evidence before it, the court finds that the statements complained of were pertinent to the civil action in which they were filed and are therefore absolutely privileged. Accordingly, FDIC's motion for summary judgment as to Crowley's claim of defamation must be granted.[4]

4. Because plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial on any of his claims, the court need not consider whether those claims are barred by 12

*Conclusion*

For the reasons set forth herein, defendant FDIC's motion for summary judgment (document 17) is granted.

SO ORDERED.

U.S.C. § 1823(e) and the doctrine set forth in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).