1st Savings Bank v. Alter          CV-94-552-L    04/04/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

First Savings Bank, FSB


        v.                              #C-94-552-L


Frederick J. Alter, et al.


ORDER

Currently before the court is plaintiff's Motion to Dismiss. Doc. 7.  For the reasons enumerated below, the motion is granted in part and denied in part.


BACKGROUND

Plaintiff, First Savings Bank, FSB, is a banking corporation organized and existing under the laws of the state of Texas. Plaintiff's principal place of business is located at 100 East South Street, Arlington, Texas.

Defendant, Frederick J. Alter, resides at 1 Shady Hill Road in Nashua, New Hampshire.  Defendant, Stephen M. Alter, resides at 99 Fuller Pond Road, Middleton, Massachusetts.

On or around July 16, 1986, defendants signed and delivered to Bankeast, a New Hampshire banking corporation, a Promissory Note in the principal amount of $271,500.00.  To secure the indebtedness due under the Promissory Note and certain covenants

contained therein, defendants executed and delivered to Bankeast a Mortgage Deed dated July 16, 1986. The Mortgage Deed is recorded in the Hillsborough County Registry of Deeds.

During 1993, defendants were in default of their obligations under the Promissory Note and Mortgage Deed for:

a. Failure to make monthly installment payments of principal and interest when and as due pursuant to the Promissory Note;

b. Failure to pay property taxes to the City of Manchester for more than three (3) years, thereby encumbering Plaintiff's title to the Mortgage Deed to the extent of approximately $28,000.00.

Upon the failure of Bankeast on or around December 29, 1993, the Federal Deposit Insurance Corporation (hereafter FDIC), acting in its capacity as receiver for Bankeast, assigned the aforementioned Promissory Note and Mortgage Deed to the plaintiff, First Savings Bank, FSB.

Although not required by the terms of either the Promissory Note or the Mortgage Deed, plaintiff, on February 18, 1994, offered defendants an opportunity to cure existing defaults of the Promissory Note and Mortgage Deed by paying the outstanding tax bills and bringing the payment arrearage current.

Defendants failed to bring the tax bills and payment arrearage current, and on April 15, 1994 the payment terms of the Promissory Note were accelerated and the defendants were notified

2

of plaintiff's intention to exercise its foreclosure right in accordance with N.H. Rev. Stat. Ann. § 479:26. The acceleration notice was accompanied by a foreclosure notice which indicated that a sale of the property would occur on June 17, 1994.

On the date of the foreclosure sale, the plaintiff and defendants negotiated an adjournment of the foreclosure sale until July 15, 1994. As consideration for the adjournment, defendants paid to plaintiff the sum of $2,500.00 and plaintiff agreed to continue negotiating settlement of the loan default during the period of adjournment.

Subsequently, the defendants failed to engage in any meaningful negotiations with the plaintiff during the period of adjournment and neglected to bring their loan current.

On July 15, 1994, the property securing the Promissory Note was sold at auction to Pierre Peloquin for $115,000.00 subject to outstanding property taxes of approximately $22,000.00. As of the date of foreclosure, the subject property had an appraised fair market value of $128,000.00

Title was transferred to Michele C. Peloquin by Foreclosure Deed on September 2, 1994. Net proceeds of $114,425.00 were then paid to the plaintiff and applied against the outstanding balance due under the original Promissory Note.

Following the foreclosure sale and receipt of $114,425.00,

plaintiff brought suit against the defendants, maintaining that under the terms of the Promissory Note, the defendants are obligated to pay the outstanding balance of principal plus accrued interest and late charges together with all reasonable costs and expenses of collection including, without limitation, reasonable attorneys' fees. Plaintiff asserts that the principal balance due as of September 2, 1994 is $156,403.87. Further, interest continues to accrue at a rate of $41.78 a day.

In answering plaintiff's complaint, defendants set forth various defenses. Within their answer, defendants also asserted a number of cross claims against plaintiff including breach of good faith and fair dealings, failure to comply with N.H. Rev. Stat. Ann. § 399-B, violations of the federal truth-in-lending laws, and negligence.

Now for the court's consideration is plaintiff's Motion to Dismiss. Doc. 7. Specifically, plaintiff maintains "the allegations contained under the various counterclaim headings are repetitive and lack specific statements of fact" and therefore fail to state a claim upon which relief may be granted. Id.


DISCUSSION

As a threshold consideration to deciding the issues

4

presented in plaintiff's motion to dismiss, the court notes a tangential issue raised by both parties which warrants consideration.  Specifically, both parties represent to the court that the viability of the cross claims may depend on whether plaintiff, upon receiving the Promissory Note and Mortgage Deed, acquired the status of a holder in due course.

I.   Holder in due course

Note 5 of the Uniform Laws Comments of N.H. Rev. Stat. Ann. § 382-A:3-302 (1993) provides that "[u]nder the governing federal law, the FDIC and similar financial institution insurers are given holder in due course status and that status is also acquired by their assignees under the shelter doctrine."

In the case at hand, the Promissory Note and Mortgage Deed were acquired by the FDIC when it assumed control of Bankeast. Upon assuming control of Bankeast, it is beyond peradventure that the FDIC enjoyed the status of a holder in due course as a regulatory agency succeeding to the assets of a failed banking institution.  See N.H. Rev. Stat. Ann. § 382-A:3-302 (1993); Federal Savings and Loan Insurance Corporation v. Murray, 853 F.2d 1251 (5th Cir. 1988); D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447 (1942).  The FDIC's status as a holder in due course then transgressed to FDIC's

5

assignee, First Savings Bank, FSB.  See Bowling Green, Inc. v. State Street Bank & Trust Co., 425 F.2d 81 (1st Cir. 1970). Finally, as a holder in due course of the Promissory Note and Mortgage Deed, plaintiff First Savings Bank, FSB is entitled to enforce provisions of the instruments free of certain defenses. See N.H. Rev. Stat. Ann. § 382-A:3-305 (1993).

Defendants seemingly muddle the holder in due course issue by stating that at the time of assignment of the promissory note, plaintiff should have known that the note was in default. However, the fact that the plaintiff might have been aware, upon reasonable investigation, of the default does not militate against plaintiff's status as a holder in due course.

The law is apodictic that even the FDIC's actual knowledge of a particular encumbrance or an extrinsic agreement in conflict with an instrument does not prevent the FDIC from acquiring the status of a holder in due course relative to the particular instrument.  See Levy v. FDIC, 7 F.3d 1054, 1057 n. 6 (1st Cir. 1993); McCullough v. FDIC, 987 F.2d 870, 874 (1st Cir. 1993); In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332, 1346-47 (1st Cir. 1992).  Thus, if the FDIC acquired the status of a holder in due course and such status is not affected by FDIC's actual knowledge of an extrinsic agreement or conflict, then it follows that First Savings Bank, FSB's status as a holder in due course

6

should likewise be unaffected. After all, as enunciated in RSA 382-A:3-302 a transferee of a negotiable instrument is entitled to holder in due course status <u>if a transferee acquired the negotiable instrument from a holder in due course.</u> N.H. Rev. Stat. Ann. § 382-A:3-302(c) (1993).

Finally, defendants' contention that the plaintiff's status as a holder in due course is diminished or hampered by the uncertainties associated with the adjustable interest rate provision within the Promissory Note is simply without merit.

Fundamentally, N.H. Rev. Stat. Ann. § 382-A:3-112(b) (1993) (hereafter RSA 382-A:3-112) provides that

> [i]nterest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require preference to information not contained in the instrument. If an instrument provides for interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues.

Construing RSA 382-A:3-112 in its most simplistic form, an adjustable rate provision within an instrument, like the one referenced by defendants, neither renders the underlying instrument non-negotiable nor relieves a contracting party of liability associated with the instrument.

Having determined that plaintiff acquired holder in due

7

course status, the court now considers the motion to dismiss.

II. Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is one of very limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (overruled, on other grounds, by Davis v. Scherer, 468 U.S. 183 (1984)). A court must take the factual averments within the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). In the end, a motion to dismiss may be granted under Rule 12(b)(6) "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

With the above principles in mind, the court reviews the underlying issues presented in the instant case.

8

A.    Violation of N.H. Rev. Stat. Ann. § 399-B

In relying on the privileges and rights afforded to one having holder in due course status, plaintiff asserts that it should not be held liable on the illegality theory propounded in defendants' cross claims.  Thus, plaintiff asserts dismissal is warranted.

However, defendants allege that upon receiving the instruments from the FDIC, plaintiff took the instruments subject to certain defenses.  Specifically, defendants maintain that even "assuming that the plaintiff held the status of a holder in due course, the defense of illegality can be asserted against the [plaintiff]."  Essential to this conclusion, defendants assert that the initial extension of credit by Bankeast was done in contravention of N.H. Rev. Stat. Ann. § 399-B (1983) (hereafter RSA 399-B), thereby rendering the instrument illegal under N.H. Rev. Stat. Ann. § 382-A:3-305 (1993) (hereafter RSA 382-A:3-305). Further, this illegality remains as a blemish on the instrument even if the instrument is subsequently assigned to another holder.  According to defendants, the intendment of RSA 399-B:1 et seq. is to place the burden on a lender to inform a prospective borrower, in writing, of the finance charges to be paid.  See American Home Improvement v. MacIver, 105 N.H. 435 (1964).

9

Notably RSA 399-B:1, et seq. do require a lender to set forth in writing certain finance charges to prospective borrowers, prior to or contemporaneous with the delivery of certain loan documents. See N.H. Rev. Stat. Ann. § 399-B:2. Further, RSA 399-B:4 provides that

> [w]hoever wilfully violates any provision of RSA 399-B shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person.

In addition to the requirements propounded in RSA 399-B:1 et seq., RSA 382-A:3-305(b) provides that "[t]he right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to the defenses of the obligor stated in subsection (a)(1) . . . ." Subsection (a)(1) provides that the right of a holder in due course to enforce the obligation of a party is subject to "a defense of the obligor based on . . . (ii) . . . illegality of the transaction which, under the law, nullifies the obligation of the obligor." It is this last aspect of subsection (a)(1), illegality of the transaction nullifying the obligation, which defendants maintain should control in the instant case.

Although defendants are correct in that certain defenses may be raised against a holder in due course pursuant to RSA 382-A:3-305, defendants are incorrect in assuming or inferring that an RSA 399-B type violation has semblance to the type of illegality

10

referenced in RSA 382-A:3-305.  Succinctly, the illegality referenced in RSA 382-A:3-305 is most often a matter involving gambling or usury.  <u>See</u> N.H. Rev. Stat. Ann. § 382-A:3-305, <u>Defenses and Claims in Recoupment</u>, Uniform Laws Comments, Note 1.  Further, if an illegality defense happens to be based on non-compliance with a particular statute, and the effect of the illegality is to make the obligation <u>entirely null and void</u>, then the defense of illegality may be asserted against a holder in due course.  Otherwise, <u>such a defense is barred</u>.  Emphasis added.  N.H. Rev. Stat. Ann. § 382-A:3-305, <u>Defenses and Claims in Recoupment</u>, Uniform Laws Comments, Note 1.

In considering whether a violation of RSA 399-B rises to a level requiring nullification or voiding of a particular instrument, the New Hampshire Supreme Court has held that a variation from the provisions of RSA 399-B does not <u>ipso facto</u> render an instrument void.  <u>Decato Brothers v. Westinghouse Credit Corp.</u>, 129 N.H. 504, 509 (1987); <u>First Fed. Savings & Loan Association v. LeClair</u>, 109 N.H. 339, 341 (1969); <u>American Home Improvement</u>, 105 N.H. at 438.  Additionally, where there is non-compliance with the provisions of RSA 399-B the appropriate alternative to declaring an instrument void is to analyze factually, the parties' circumstances, and from that analysis determine a middle ground which is not repugnant to the

11

reasonable expectations of the parties.  See <u>Decato Brothers</u>, 129 N.H. at 509-510.  Finally, rather than invalidating an instrument based on the misstep of a lender, the logical approach is to hold the lender accountable.  In fact, RSA 399-B follows just such an approach by subjecting a lender, who fails to comply with RSA 399-B, to misdemeanor or felony charges.  N.H. Rev. Stat. Ann. § 399-B:4.

Given that non-compliance with RSA 399-B does not render a Promissory Note or Mortgage Deed entirely null and void, the law cannot provide relief for defendants' illegality theory.  This being the case, plaintiff's request to dismiss defendants' cross claim involving illegality and violation of RSA 399-B must be granted.

B.   Negligence and duty to act in good faith

The last issue raised by plaintiff in its motion to dismiss is that defendants have failed to allege sufficient facts to warrant a cause of action involving negligence and/or a violation of a duty to act in "good faith."  Specifically, plaintiff maintains that defendants have failed to allege any actions, by plaintiff, which are akin to an "intentional disregard of a duty or a purpose to injure."  <u>Murphy v. Financial Development Corporation</u>, 126 N.H. 536, 542 (1985).

12

Without commenting on the merits of these allegations, defendants have put forth sufficient factual averments indicating a viable theory of recovery for both negligence and a violation of certain duties owed by plaintiff. Succinctly, defendants have alleged that plaintiff acted negligently and violated covenants of good faith and fair dealing by failing to generate sufficient interest in the real estate, failing to maximize bidding amounts, failing to abide by the terms and conditions of the Promissory Note and Mortgage Deed, utilizing the foreclosure statute to extract money from defendants, and breaching well-recognized fiduciary duties.

In sum, defendants have provided sufficient facts to support a viable theory of recovery based on negligence and violation of certain duties owed. See Murphy, 126 N.H. at 541 ("A mortgagee . . . must exert every reasonable effort to obtain `a fair and reasonable price under the circumstances,' even to the extent, if necessary, of adjourning the sale or of establishing `an upset price below which he will not accept any offer.'") Further, the theories of recovery are not hampered or affected by the court's prior determination concerning plaintiff's status as a holder in due course. This being the case, plaintiff's request to dismiss defendants' negligence and violation of good faith cross claims must be denied.

13

CONCLUSION

Based on a review of the facts presented and a consideration of the applicable law, the court opines that upon receiving the Promissory Note and Mortgage Deed, the FDIC and First Savings Bank, FSB became holders in due course. Further, defendants have not alleged sufficient facts to warrant a conclusion that plaintiff took the Promissory Note and Mortgage Deed subject to a defense premised on illegality. Thus, plaintiff's request to dismiss defendants' cross claim, involving an RSA 399-B violation, is granted. However, as defendants have offered facts which reasonably may entitle them to recover on theories of negligence and violations of good faith, plaintiff's request to dismiss these cross claims is denied.

Finally, as both parties concur that the Truth-in-Lending Act does not pertain to the instant action, all claims based on that Act are properly dismissed.

April 4, 1995

                                               _____

Martin F. Loughlin
Senior Judge

Kenneth R. Cargill, Esq.
William E. Aivalikles, Esq.

14