Hillsborough-southern judicial district
No. 93-194

## FIRST NH MORTGAGE CORP.

v.

## BARRY A. GREENE & a.

January 20, 1995

*Sheehan, Phinney, Bass & Green, P.A.*, of Manchester (*James E. Higgins* and *Robert R. Lucic* on the brief, and *Mr. Higgins* orally) and *Peabody & Brown*, of Manchester (*John A. Rachel* on the brief), for the plaintiff.

*Barry A. Greene, Samuel G. Proctor, Jr., Frank McGuire, Barbara McGuire, Jim Baskins, Robert A. Manning*, and *Kerbert E. Porter-Elliott, pro se*, on the joint brief, and *Mr. Greene* orally.

*Andrew C. Ruoff, pro se,* filed no brief.

BROCK, C.J. The plaintiff, First NH Mortgage Corp. (FNHMC), appeals the decision of the Superior Court (*Dalianis,* J.) ruling that the defendants are not liable to the plaintiff under an agreement guaranteeing payment of a promissory note, made by New Boston Properties, Inc., in favor of FNHMC. On appeal, the plaintiff argues that the trial court erred in allowing the defendants to present the defense that the sale of the collateral real estate was commercially unreasonable. The plaintiff also argues that the sale was commercially reasonable as a matter of law. We affirm.

The defendants, owners of New Boston Properties, sought to develop a 267-acre tract in the town of New Boston. On August 3, 1988, New Boston Properties executed a promissory note in favor of FNHMC in the principal amount of $691,000. The note was secured by a mortgage on the 267-acre tract, as well as by a joint and several guaranty of the full amount of the mortgage, plus interest and costs, signed by each of the defendants.

After twelve months, the term of the note, FNHMC refused to extend the loan and demanded payment. New Boston Properties did not make payment and filed for Chapter 11 bankruptcy. Exercising its rights under the mortgage, FNHMC obtained relief from the automatic stay, *see* 11 U.S.C.A. § 362 (1993), and foreclosed on the property. At the foreclosure sale in August 1990, FNHMC was the only bidder, entering a successful bid of $500,000.

FNHMC enlisted auctioneer James St. Jean to conduct the sale. St. Jean advertised the property in regional newspapers, distributed fliers, and posted a sign on the subject property. He testified at trial that the amount of advertising for this sale was "maybe a little" more extensive than for the average sale of real property. St. Jean made no independent verification of the information contained in the advertisements, which was provided to him by FNHMC.

Although the property was only a 7.5-mile drive from all of the major north-south and east-west commuter routes in the area, through a desirable section of Bedford, the advertisements made no mention of this fact. Indeed, the advertisements directed interested parties to reach the parcel via Route 13, a course that would take a potential buyer from the densely populated parts of the region over a circuitous route through Milford or Goffstown. Testimony at trial indicated that location was crucial to New Boston Properties' initial decision to buy the property.

On July 7, 1987, the property was appraised at $2,136,000. As of December 21, 1989, the property had decreased in value to $1,700,000. These figures were derived by Richard D. Rockwood, an experienced

appraiser qualified as an expert at trial. On March 15, 1990, FNHMC's appraisal consultant estimated that the property's market value was $935,000. At trial, however, the defendants' expert testified that, as of the foreclosure sale date, the property had a value of $1.3 million to $1.4 million in the "worse [sic] case scenario."

Based in part on these figures, the defendants argued at trial, over the plaintiff's objection, that FNHMC's purchase price of $500,000 was commercially unreasonable and that a commercially reasonable price would have covered the costs associated with the promissory note. The plaintiff asserted that a defense of commercial reasonability was unavailable to the guarantors of the note. In support of this assertion, the plaintiff relied upon language in the guaranty agreement signed by the defendants. This language includes the following provisions: "The undersigned . . . waive any and all defenses available to a surety or a guarantor except payment and performance in full"; and "the liability of the undersigned shall not be affected by any action which Lender [FNHMC] may take or fail to take with respect to any . . . security for the obligations hereby guaranteed . . . ."

The trial court allowed the defendants to present the defense. The court found the sale to be commercially unreasonable and ruled in the defendants' favor. We will not overturn the trial court's findings and rulings unless they are unsupported by the evidence or are erroneous as a matter of law. *Hawthorne Trust v. Maine Savings Bank*, 136 N.H. 533, 536, 618 A.2d 828, 830 (1992).

■■ "In his role as a seller, the mortgagee's duty of good faith and due diligence is essentially that of a fiduciary." *Murphy v. Financial Development Corp.*, 126 N.H. 536, 541, 495 A.2d 1245, 1249 (1985). This fiduciary duty is owed not only to mortgagors, but also to guarantors. *Numerica Savings Bank v. Mountain Lodge Inn*, 134 N.H. 505, 509, 596 A.2d 131, 134 (1991). The terms of a guaranty agreement, however, may provide for a waiver of a guarantor's right to an abatement of liability based on the mortgagee's breach of its fiduciary duty. *Id.*

Such a waiver, however, is not absolute. "The law is settled that exculpatory agreements by a mortgagor which relieve [the mortgagee] from liability for negligence are valid and enforceable; but such provisions which purport to relieve from bad faith or intentional wrongs are considered to be against public policy and will not be enforced." *Reconstruction &c. Corp. v. Faulkner*, 101 N.H. 352, 358, 143 A.2d 403, 408 (1958) (concerning both real and personal property). Furthermore, courts have differentiated between breaches of a fiduciary duty arising from "affirmative" versus "passive" negligence. *See Nashua Trust Co. v. Weisman*, 122 N.H. 397, 400, 445 A.2d 1101, 1103 (1982) (collecting authorities). Although reserving the issue in

*Nashua Trust,* this court noted that the "emerging trend" is to allow a defense to liability under an unconditional guaranty where the breach of the fiduciary duty is caused by affirmative negligence. *Id.* In discussing "the rule as to negligent affirmative acts," the Supreme Court of Nebraska has observed that "cases in many instances distinguish between affirmative action and passive nonaction, and impose liability [on the mortgagee] for the affirmative action in either an absolute or conditional guaranty, but impose liability for passive negligence only under a conditional guaranty." *Custom Leasing v. Carlson Stapler & Shippers,* 237 N.W.2d 645, 649 (Neb. 1976).

We acknowledge that *Nashua Trust* and *Custom Leasing* both concern personal property, but we find their analysis of this issue to be persuasive. Each was decided before the respective States adopted the Uniform Commercial Code. Therefore, they are rooted in the common law, and *Nashua Trust* can thus be seen as a clarification of the common law principles articulated in *Reconstruction &c. Corp.,* applying to both real and personal property.

■ The issue now being squarely before us, we hold that, where a breach of the fiduciary duty owed a guarantor or mortgagor by a mortgagee is the result of affirmative negligence, the defense of commercial unreasonableness cannot be waived. *See Custom Leasing,* 237 N.W.2d at 649; *Nashua Trust,* 122 N.H. at 400, 445 A.2d at 1103; *cf. United States v. Willis,* 593 F.2d 247, 254–55 (6th Cir. 1979) ("Carried to its logical extreme, the [plaintiff's] view would permit it to collect the indebtedness from the guarantor even in a case where it had simply given the collateral away, or worse, destroyed it") (decided under Uniform Commercial Code).

In the instant case, the trial court based its decision on the plaintiff's failure to exercise due diligence to ensure that a fair price would be obtained through the foreclosure sale. Thus, the critical issue is whether the lack of due diligence arose from affirmative or passive negligence.

■ The trial court found that "the defendants' argument that the manner in which the plaintiff advertised this parcel *actually* discouraged potential bidders is persuasive." This finding is supported by the evidence showing that the advertisements misrepresented the advantageous location of the New Boston property. Actions taken by a mortgagee that would discourage other buyers at a foreclosure sale may support a finding that the sale was improper. *See Murphy,* 126 N.H. at 542, 495 A.2d at 1250. The trial court found that the plaintiff violated its fiduciary duty by failing to act with due diligence. We hold that the manner in which the plaintiff advertised this parcel constituted affirmative negligence sufficient to render a waiver of

defenses void. Therefore, the defense of breach of fiduciary duty was properly allowed by the trial court.

█ We now turn to the trial court's ruling that the sale was commercially unreasonable. The court found that the plaintiff failed properly to market the property, failed to adjourn the foreclosure, and failed to set an upset price. *See id.* at 541, 495 A.2d at 1249–50. There is no factual dispute as to the failure to adjourn or to set an upset price. Additionally, the trial court found that the "purchase price was clearly inadequate." This finding is supported by the appraisal evidence admitted at trial. Taken together with the potentially misleading advertising, there is ample evidence to support the trial court's conclusion that FNHMC did not act as a reasonable person would have acted, under the circumstances, to obtain a fair price. *See id.* at 542, 495 A.2d at 1250.

*Affirmed.*

All concurred.