Emanuel v. SBA                           CV-97-012-JD  10/16/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Michael S. Emanuel, et al.

     v.                              Civil No. 97-012-JD

United States Small Business
Administration


O R D E R


     Michael Emanuel, the pro se plaintiff, has asserted various
claims against the defendant, the United States Small Business
Administration (the "SBA"), arising from the SBA's foreclosure
sale of the business property of Quality Discount Foods Corp.
("Quality"), a company owned by Emanuel.  Before the court is the
defendant's motion to dismiss the plaintiff's amended complaint
(document no. 27).


Background

     The court incorporates by reference the factual background
discussed in its order of March 6, 1998.  See Emanuel v. United
States Small Bus. Admin., No. 97-012-JD, slip op. at 1-2 (D.N.H.
Mar. 6, 1998).  In that order the court rejected counts one and
three of the plaintiff's initial complaint, alleging in essence
misrepresentation or fraud, because it lacked subject matter
jurisdiction over those claims.  See id. at 5-8.  In count two,

however, the plaintiff asserted that the defendant breached contractual duties owed him. The defendant moved for dismissal of this claim as well, asserting, inter alia, that the claim was barred by the statute of limitations. However, the plaintiff failed to plead this claim with sufficient particularity to allow the court to resolve the issue. The court therefore granted leave to the plaintiff to amend his complaint as follows:

> the plaintiff's complaint must include clear, specific statements identifying: (1) the contract and terms that the defendant has allegedly breached; (2) the duties the defendant allegedly owed the plaintiff that arose from the contract; and (3) the actions of the defendant that allegedly breached the contractual duties owed the plaintiff.

Id. at 10.

On April 3, 1998, the plaintiff filed his amended complaint. In the amended complaint, the plaintiff alleges that: (1) Quality borrowed $261,600 from the SBA as a "displaced business loan" in 1974 to purchase a site for a supermarket (the "Quality property")[1]; (2) Quality encountered financial difficulties and purchased inventory with money allocated for the payment of real estate taxes; (3) the SBA foreclosed on the Quality loan; (4) the principle on the loan had been reduced to roughly $90,000; (5) the Quality property was sold by the SBA at public auction for

---

[1]The record indicates that the plaintiff co-signed the loans as a guarantor.

$134,000^2$; (5) there were no other bidders at the auction besides the purchasers; (6) the Quality property was subsequently resold by the purchasers for $350,000; (7) the city of Laconia appraised the Quality property at $959,000; (8) the property was appraised by another creditor at $500,000 to $700,000; (9) the SBA appraised the property at $300,000; (10) the SBA's appraisal was inaccurate as it used improper comparables; and (11) the public auction was conducted inappropriately as it was held on the coldest day of the year.

The plaintiff asserts that the SBA is liable because it should not have initiated the foreclosure on the property, the property should not have been sold at auction for less than its value, and the conduct of the sale was inappropriate as the sale was held on the coldest day of the year. The plaintiff also asserts a novel claim of a conflict of interest between the SBA, United States Senator Judd Gregg, and the New Hampshire law firm of Sullivan and Gregg. The defendant has again moved for dismissal, re-asserting its earlier arguments as well as new arguments in response to the amended complaint.

---

[2]The defendants assert that the sale price included payment of $43,000.00 for overdue taxes in addition to the $134,000.00.

Discussion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

"Our judicial system zealously guards the attempts of pro se litigants" to represent their own interests. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, 118 S.Ct. 1165 (1998). The court has a duty to liberally construe a pro se plaintiff's complaint. See id. If a pro se plaintiff alleges sufficient facts from which the court can intuit a cause of action, even if the plaintiff imperfectly pleads the cause of

action, the court must not dismiss the case.  See id.  "However, pro se status does not insulate a party from complying with procedural and substantive law."  Id.

A.    Commercial Reasonableness

The plaintiff has asserted that the SBA undervalued the property at issue, wrongfully sold the property for an insufficient amount, and should not have conducted the sale, inter alia, on the coldest day of the year.  The issue presented by the plaintiff's allegations is whether there was a duty on behalf of the SBA to realize some minimum price and to engage in some minimum standard of conduct in connection with its foreclosure of the property at issue.

This case arises from a nationwide federal program designed to assist small businesses in part through dispersing federal funds in the form of loans or guarantees under the auspices of the SBA.  Federal legislation does not address the rights and obligations of the SBA as a mortgagee in foreclosing upon property.  Many circuits have found incorporation of state law warranted to fill the interstices of the federal legislation.

In United States v. Conrad Publishing Co., the Eighth Circuit incorporated the Uniform Commercial Code ("UCC"), as adopted by North Dakota, into federal law and upheld the district

5

court's determination that the SBA had not conducted a foreclosure in a commercially reasonable manner. See 589 F.2d 949, 952-54 (8th Cir. 1978). In Great Southwest Life Ins. Co. v Frazier, the Ninth Circuit incorporated the UCC, as adopted by Idaho, into federal law, and found that: (1) a co-maker of a note could not assert an impairment of collateral defense; and (2) defenses provided under Idaho's rendition of the UCC, as incorporated into federal law, survived a contractual waiver. See 860 F.2d 896, 899-903 (9th Cir. 1988). In United States v. Dismuke, the Fifth Circuit found the SBA's suit for a deficiency judgment precluded as the SBA had failed to comply with a Georgia statute, incorporated by the court into federal law, that required judicial confirmation of a foreclosure sale. See 616 F.2d 755, 758-59 (5th Cir. 1980). In Wainright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n., the Seventh Circuit applied the UCC as adopted by state law, and the commercial reasonableness standard, to determine the rights and obligations of the SBA in foreclosing on loans. See 806 F.2d 146 at 149-50 (7th Cir. 1986). Cf. United States v. Warwick, 695 F.2d 1063 (7th Cir. 1982) (applying the UCC as federal law to determine rights and obligations of SBA without specific reference to state law). See also, Regan v. United States Small Bus. Admin., 926 F.2d 1078, 1082 (11th Cir. 1991) (incorporating state law into

6

federal law governing rights and obligations of SBA).

The First Circuit has not expressly determined that federal law governing the rights and obligations of the SBA should incorporate state law, although approval of such an incorporation can be inferred from United States v. Baus. See 834 F.2d 1114, 1125 (1st Cir. 1987). In Baus, the First Circuit addressed whether the SBA, representing the Economic Development Administration, had breached a duty it allegedly owed to the guarantors of a loan it had foreclosed upon. The court noted that it was "well-established" that a secured creditor who seizes and disposes of loan collateral after a default must do so in good faith and in a commercially reasonable way. Id. at 1125 (citing the UCC's adoption by forty-nine states). The court in Baus also noted that other courts applying federal law have repeatedly referred to the UCC, see id. at 1126, and observed that a breach of a duty of commercial reasonableness may have occurred in the case, see id. at 1127. The First Circuit revisited the issue in United States Small Bus. Admin. v. Sotomayor-Santos, stating that "absent agreement to the contrary, a federal lender like SBA may be subject to a general obligation to behave reasonably in disposing of any collateral upon which it forecloses." 96 F.3d 584, 585 (1st Cir. 1996) (citing Baus, 834 F.2d at 1125-26).

7

New Hampshire has also adopted the UCC as state statutory law. See RSA § 382-A (1994). Following a majority of courts that have considered the question, and an indication that the First Circuit would join the majority in an appropriate case, the court will use state law pertinent to a secured party's right to dispose of collateral after a default as federal law in considering the SBA's obligations and plaintiff's claims in this case. Section 504(3) provides:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the methods, manner, time, place and terms must be commercially reasonable.

RSA § 382-A:9-504(3) (1994). The official comment appended to section 382-A:9-504 indicates that section 382-A:9-507(2) provides some relevant tests to determine "commercial reasonableness." "If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." RSA § 382-A:9-507(2) (1994). Section 382-A:9-507(1) in turn provides that if "the disposition has occurred the debtor or any

8

person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by failure to comply with the provision of this Part." RSA 382-A:9-507(2) (1994).

Moreover, the New Hampshire Supreme Court has held that "[i]n his role as a seller, the mortgagee's duty of good faith and due diligence is essentially that of a fiduciary." Murphy v. Financial Dev. Corp., 126 N.H. 536, 541, 495 A.2d 1245, 1249 (1985). "This duty is owed not only to mortgagors, but also to guarantors." First NH Mortgage Corp. v. Greene, 139 N.H. 321, 323, 653 A.2d 1076, 1077 (1995).

The court finds that the plaintiff's amended complaint alleges sufficient facts to state a cause of action against the SBA for abridging a duty of conducting the sale in a commercially reasonable manner.[3] This is premised in part upon the appraised values of the property, the price received at foreclosure for the property, and the subsequent resale value of the property.[4]

---

[3]The court clarifies that this does not mean the plaintiff has proven his case, but has merely established the elements necessary to state an actionable claim.

[4]As discussed above, the plaintiff alleges that the property at issue was appraised by the city of Laconia for $959,000 and by the SBA for roughly $300,000, that it was sold at auction for $134,000, but then subsequently resold for $350,000. The defendant indicates that roughly $43,000 in back taxes were also

9

If the plaintiff intends to assert a cause of action against the SBA alleging that it breached an obligation of commercial reasonableness under N.H. RSA §§ 382-A:9-504 and 507, and a fiduciary duty, incorporated as federal law, the plaintiff is granted leave to file a second amended complaint by November 16, 1998. The second amended complaint must identify those aspects of the foreclosure that the plaintiff asserts were not commercially reasonable, and must allege facts that support such a claim. Failure to comply with this order will result in dismissal of this case with prejudice. The plaintiff has already been given one opportunity to amend his complaint.

In light of the above discussion, the court denies the defendant's motion to dismiss, premised upon the statute of limitations, without prejudice to renew upon the filing of the plaintiff's second amended complaint.

B. <u>Discretionary Decisions</u>

In the plaintiff's "Memorandum of Law & Objection to Motion to Dismiss," he asserts that the defendant breached a contract when it failed to exercise its discretion under its statutory authority to extend the loan rather than foreclose on it.

—————————————

paid in consideration for the property.

10

Specifically, the plaintiff first cites 15 U.S.C.A. § 631a(a) (West 1997), under the heading "Congressional declaration of small business economic policy," for the Congressional policy of fostering small businesses. He then relies on 15 U.S.C.A. § 636(a)(7) to establish the Administration's power to defer payment on the principal of loans.[5] From these statutory provisions he concludes that the SBA breached a contract.

Section 631a(a) is a statement of general policy. Section 636(a)(7) limits the SBA's authority to defer loan payments to situations where "it deems [it] necessary and appropriate to assure the successful establishment and operation of such concern." The language is permissive, indicating the discretionary nature of the decision. Cf. SGA Financial Corp. v. United States Small Bus. Admin., 509 F. Supp. 392, 397 (D. N.J. 1981), aff'd SGA Financial Corp. v. United States Small Bus. Admin., 673 F.2d 1301 (3rd Cir. 1981) (permissive language a factor indicative of administrative discretion).

The court is aware of no support for the proposition that

---

[5]The plaintiff's reliance on 42 U.S.C.A. § 3142(b)(7) and 42 U.S.C.A. § 3211(5) (West 1994) is inapposite as they relate to loans issued by the Secretary of Commerce under the Public Works and Economic Development Act, 42 U.S.C.A. §§ 3121-3246 (West 1994), and the plaintiff's loans were issued under the SBA's disaster lending authority pursuant to 15 U.S.C.A. § 636(b)(3) (repealed 1986) (West 1997).

the SBA's failure to exercise its discretion to extend rather than foreclose a loan constitutes a breach of contract with the mortgagor, giving rise to a viable cause of action. Indeed, courts have found the SBA's decision to grant or extend a loan to be non-reviewable by the courts. See Gifford v. Small Bus. Admin., 626 F.2d 85 (9th Cir. 1980); United States v. Capital Assistance Corp., 460 F.2d 256 (9th Cir. 1972); Copake Lake Dev. Corp. v. United States, 490 F. Supp. 386 (E.D.N.Y. 1980); Tuepker v. Farmers Home Admin., 525 F. Supp. 237 (W.D. Mo. 1981); see also, Helgeson v. Bureau of Indian Affairs, Dep't of the Interior, United States, 1998 WL 541372, at *3-4 (9th Cir. 1998). Nor does a general statement of policy provide a cause of action for the plaintiff. See Concrete Tie, Inc. v. Liberty Constr., Inc., 107 F.3d 1368, 1372 (9th Cir. 1997) ("Policies are the result of discretionary decisions and are established to guide the agency's employees; a declaration of policy does not create a legally enforceable duty.").

Significantly, the plaintiff does not assert that he was timely in his tax or loan payments such that the SBA breached its contract in foreclosing on the loan. Such payments are a necessary part of the contractual obligations as the mortgage deed explicitly stated it was issued upon statutory conditions. See RSA § 477:29(II) (statutory conditions include payment of

12

taxes "when due"); <u>see also</u>, Def.'s Mot. to Dismiss Am. Compl., Ex.2, Attach. 2 at 2 (note payable) (upon nonpayment of indebtedness when due, holder is empowered to sell collateral at public or private sale).  Moreover, reliance on the SBA's prior actions in not foreclosing earlier would be unfounded.  <u>See</u> <u>id.</u> at 1, 2 (note payable) (holder's failure to exercise rights does not constitute waiver of them) (security rights of holder not impaired by any indulgence).

The court concludes that the plaintiff has failed to state a claim arising from the SBA's decision to initiate foreclosure on the property at issue.


C.    <u>Misrepresentation, Fraud, and Constructive Fraud</u>

As indicated above, the plaintiff reasserted claims alleging misrepresentation, fraud, and constructive fraud that the court had previously dismissed due to its lack of jurisdiction over them.  <u>See</u> <u>Emanuel,</u> slip op. at 5-8.  The plaintiff attempts to avoid the consequences of the court's earlier ruling by arguing that the SBA officials were acting beyond the scope of their authority.  Contrary to the plaintiff's assertions, the SBA is granted broad authority under its enabling statute to foreclose on mortgages on real property in connection with loans granted under the statute.  <u>See</u> 15 U.S.C.A. § 634(b) (West 1997).  The

13

plaintiff's complaint fails to allege facts indicating that the SBA, or agents of the SBA, acted outside the scope of their authority. The court dismisses the plaintiff's tort claims for fraud, constructive fraud, or misrepresentation.

D.    Conflict of Interest

The plaintiff's amended complaint asserts a conflict of interest between Senator Gregg, the law firm of Sullivan and Gregg, and the SBA, in that Sullivan and Gregg allegedly earned $6,000 from the firm's representation of one mortgage holder, Diversified Funding Services. There are no allegations that the various individuals or entities identified exercised any influence or control over, or had any interest in, each other, or derived any benefit, financial or otherwise, from the foreclosure, that would support a claim of conflict of interest. The claim is therefore dismissed.

E.    Quality Discount Market Corp.

The plaintiff appears in this case pro se in his capacity as a guarantor of the SBA loans. Quality was the debtor to the SBA for these loans. As a corporation can appear only by an attorney, see Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997), the plaintiff cannot represent the interests of Quality.

14

Quality must therefore be represented by an attorney, who must file an appearance on behalf of Quality before the second amended complaint is filed. **Failure to do so will result in the dismissal of any claims Quality may have with prejudice.**

## Conclusion

The court perceives one potentially viable claim from the plaintiff's amended complaint; an allegation that the SBA failed to conduct the foreclosure in a commercially reasonable manner and breached a fiduciary duty. Should this be the cause of action the plaintiff seeks to assert, he is to file a second amended complaint in accordance with Federal Rule of Civil Procedure 8 by November 16, 1998. The SBA will thereby be accorded an appropriate opportunity to answer the complaint and assert affirmative defenses. The SBA's motion to dismiss premised upon the statute of limitations is denied without prejudice to renew. The plaintiff's request for a hearing is denied. The plaintiff's claims alleging misrepresentation, fraud, and constructive fraud are dismissed, as is his claim asserting a conflict of interest. An attorney must file an appearance for Quality before the second amended complaint. In

light of the above discussion, the court grants in part and denies in part the SBA's motion to dismiss (document no. 27).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

October 16, 1998

cc:  Michael S. Emanuel, pro se
     T. David Plourde, Esquire